UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| HERMINIO MAGALLANES-CASAS, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>KRISTI NOEM in her official capacity as )<br>Secretary of the Department of Homeland )<br>Security, *et al.*, )<br>)<br>Respondents. ) | No. 2:26-cv-00025-JRS-MJD |

**ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS**

Herminio Magallanes-Casas seeks a writ of habeas corpus requiring that he be released from U.S. Immigration and Customs Enforcement (ICE) detention or, alternatively, that he receive a bond hearing. Because the undisputed facts demonstrate that Mr. Magallanes-Casas is eligible for bond, the Court grants his petition by directing that he be afforded a bond hearing or released from detention.

**I. Background**

The material facts are undisputed.

Mr. Magallanes-Casas is a Mexican national who last entered the United States in 1998. Dkt. 8-1 at 3. He did not enter at a port of entry or present for inspection by immigration officials. *Id.* Nevertheless, Mr. Magallanes-Casas has had numerous interactions with the federal government's immigration apparatus.

In 2018, ICE arrested Mr. Magallanes-Casas and initiated removal proceedings. He was released on bond. In early 2020, the government terminated the removal proceedings. In 2022, the

government granted Mr. Magallanes-Casas a one-year term of public interest parole due to his sons' active duty service in the U.S. military. Dkt. 8-1 at 2.

In December 2025, Indiana State Police arrested Mr. Magallanes-Casas for driving while intoxicated. He was granted—and posted—bail, but he was immediately handed over to ICE pursuant to a detainer. Dkt. 8-1 at 3. An immigration official authorized Mr. Magallanes-Casas's arrest though an administrative warrant based on 8 U.S.C. § 1226. Dkt. 8-2 at 6 (administrative warrant addressed to "Any immigration officer authorized pursuant to *sections 236* and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations") (emphasis added).

Mr. Magallanes-Casas remains in ICE custody and is currently incarcerated at the Clay County Justice Center. On January 13, Immigration Judge Matthew Beese refused Mr. Magallanes-Casas's request for a bond hearing, determining that he lacked jurisdiction to consider bond because Mr. Magallanes-Casas is legally and categorically ineligible for discretionary release. Dkt. 9-2 at 9–10.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Magallanes-Casas argues that his continued detention without even being considered for bond violates the Constitution and laws of the United States in two respects. First, he contends that his continued detention without the possibility of bond violates a declaratory judgment issued in a class action by the U.S. District Court for the Central District of California and that he is a member of the class protected by that judgment. Second, he argues that his continued detention without the possibility of bond violates the Immigration and Naturalization Act (INA).

The respondents argue that the declaratory judgment is not enforceable in this Court (or at least that this Court should not enforce it) and that the INA not only allows but requires Mr. Magallanes-Casas to be detained without bond. In any event, they argue, Mr. Magallanes-Casas's petition is premature because he has not exhausted available administrative remedies. Alternatively, they argue that Mr. Magallanes-Casas is entitled to at most a bond hearing.

The Court finds that the declaratory judgment is not dispositive to this case and declines to resolve the question of its enforceability. However, Mr. Magallanes-Casas's continued detention without possibility of bond violates the INA and entitles him to habeas relief in the form of a bond hearing. Finally, the Court finds that this relief is not barred by Mr. Magallanes-Casas's decision to proceed to this Court before pursuing additional administrative relief.

A.      The *Maldonado Bautista* Declaratory Judgment

Mr. Magallanes-Casas first argues that he is a class member entitled to relief through the declaratory judgment the Central District of California issued in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM. The petitioners in that action were, like Mr. Magallanes-Casas, held without consideration of bond. The District Court considered the same issue (whether the legal authority to detain the petitioners required that they be considered for bond) that this case presents, and it reached the same conclusion (that the petitioners were entitled to consideration of bond) that this Court reaches below. *See generally* 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (*Maldonado Bautista I*); 2025 WL 3713987 (C.D. Cal. Nov. 20, 2025) (*Maldonado Bautista II*).

On November 20, 2025, the *Maldonado Bautista* court granted the petitioners' motion for a declaratory judgment deeming DHS's widespread application of 8 U.S.C. § 1225(b)(2) and its mandatory detention provision contrary to the INA. *Maldonado Bautista I*, 2025 WL 3289861. A

3

month later, the court granted the petitioners' motion for class certification under Federal Rule of Civil Procedure 23. The court defined the certified class as:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Maldonado Bautista II*, 2025 WL 3713987, at *32. As relief, the court declared DHS's application of § 1225(b)(2) contrary to law, deemed the policy vacated pursuant to the Administrative Procedure Act (APA), and entered final judgment. *Id.* The case is now on appeal in the Ninth Circuit. *See Bautista, et al. v. United States Dep't of Homeland Security*, No. 25-7958 (9th Cir. Dec. 19, 2025).

Mr. Magallenes-Casas seeks relief from his detention on the basis that he is a member of the bond-eligible class certified in *Maldonado Bautista*. Dkt. 1 ¶¶ 39–43. The respondents object for various reasons. Dkt. 8 at 15–21.

At least one recent decision of the Supreme Court raises serious questions about *Maldonado Bautista*'s enforceability to resolve habeas corpus actions outside the Central District of California. In *Trump v. J.G.G.*, the Court reiterated that (a) any claim implying the invalidity of the claimant's custody "must be brought in habeas corpus," and (b) habeas jurisdiction lies only with the district where the claimant is confined. 604 U.S. 670, 671–72 (2025) (applying *Nance v. Ward*, 597 U.S. 159, 167 (2022); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). On that basis, the Supreme Court vacated a preliminary injunction barring the removal of a provisionally certified class of aliens and held that class members must pursue any relief in habeas actions in the districts where they were confined. *Id.* at 673–74. The precise question Mr. Magallanes-Casas raises is not the same as in *J.G.G.* He seeks relief through the proper vehicle (a habeas petition) and in the proper venue (the district where he is confined),

but he seeks relief based on a judgment issued from a different district. If *J.G.G.* does not squarely forbid this Court to grant him relief based on *Maldonado Bautista*'s declaratory judgment, it certainly presents cause for caution.

Ultimately, though, *Maldonado Bautista*'s enforceability and its interaction with *J.G.G.* are issues this Court need not resolve today. This Court and others have consistently reached the same conclusion as the Central District of California. Even without *Maldonado Bautista*, this Court finds for the reasons explained below that Mr. Magallanes-Casas's detention may be authorized only by § 1226(a), that he is therefore eligible for discretionary release on bond, and that the government's refusal to consider release on bond entitles him to habeas relief.

**B.       Detention Under § 1226(a)**

Alternatively, Mr. Magallanes-Casas asks the Court to reach the same conclusion the Central District of California reached in *Maldonado Bautista*: that his continued detention without consideration of bond is arbitrary and capricious and contrary to the INA. Dkt. 1 ¶¶ 44–53 (applying Administrative Procedure Act, 5 U.S.C. § 706(2)(A)). He invokes the now familiar argument that his detention can only be authorized by 8 U.S.C. § 1226(a):

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole[.]

8 U.S.C. § 1226(a); *see* dkt. 2 at 7–9, 10–11.

The respondents answer that Mr. Magallanes-Casas's detention is not only authorized but required by § 1225(b)(2)(A), which directs that "an alien who is an applicant for admission . . . shall be detained" for the pendency of removal proceedings. They insist that, because Mr. Magallanes-Casas has not been admitted to the United States by immigration officials, and because he opposes his removal, he is an "alien who is an applicant for admission" and therefore subject to compulsory detention under § 1225(b)(2)(A). Dkt. 8 at 7–12. This position is untenable for two reasons.

First, the respondents' interpretation of § 1225(b)(2)(A)—that every alien arrested inside the United States who seeks to remain here, no matter how long after arriving, is an applicant for admission subject to mandatory detention—is legally dubious. The Seventh Circuit recently responded to this argument with skepticism. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–61 (7th Cir. Dec. 11, 2025) ("The question is whether § 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders. . . . Based upon the text and structure of the two provisions, we believe that Plaintiffs have the better argument on the current record."). Before and since, this Court and the vast majority of other district courts have rejected the government's interpretation. *See, e.g.*, *Morales Sandoval v. Crowley, et al.*, No. 2:25-cv-00560-JRS-MKK, 2025 WL 3760760, at *3-6, dkt. 16 at 5-13 (S.D. Ind. Dec. 30, 2025); *Perez Reyes v. Bondi*, No. 4:25-cv-00239-SEB-KMB, 2025 WL 3755928, at *3 (S.D. Ind. Dec. 29, 2025) ("The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to 'arriving' noncitizens attempting to enter the United States rather than undocumented aliens like Ms. Perez Reyes who have lived in the interior of the United States for years."). "As this Court previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A);

6

(2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Id.* (citing *Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *14–19 (S.D. Ind. Oct. 11, 2025)).

The respondents here cite a smattering of contrary decisions but concede that this Court's previous analysis "control[s] the result in this case should the Court adhere to the legal reasoning in those prior decisions." Dkt. 8 at 1. The respondents offer no binding authority in the other direction, and the Court declines to depart from its previous reasoning.[1]

Second, even if the respondents' legal reasoning was more persuasive, it could not be reconciled with the government's treatment of Mr. Mr. Magallanes-Casas. As a matter of fact, the government consistently treated Mr. Magallanes-Casas as eligible for discretionary release pursuant to § 1226(a) from 2018 through his arrest in December 2025.

In 2018, ICE arrested Mr. Magallanes-Casas and initiated removal proceedings but released him on bond—presumably under § 1226(a). In 2022, the government exercised its discretion to grant Mr. Magallanes-Casas public interest parole due to his sons' active duty military service. The respondents do not confront these actions in their briefing. Moreover, they do not explain how Mr. Magallanes-Casas is any more "an alien who is an applicant for admission" who is subject to

---

[1] The respondents offer a passing reference to *Cruz Rodriguez v. Olson*, No. 1:25-cv-12961, 2025 WL 3672856 (N.D. Ill. Dec. 17, 2025), withdrawn & superseded, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026), which the Court addresses specifically due to its recency and its issuance from within the Seventh Circuit. *See* dkt. 8 at 2. *Cruz Rodriguez* offers a thorough and thoughtful analysis of §§ 1225 and 1226 and concludes that *both* provisions apply to certain aliens apprehended inside the United States. *See Cruz Rodriguez*, 2025 WL 3672856, at *7 ("Sections 1225(b)(2) and 1226 have different, but overlapping, scopes."). This Court does not adopt this logic for reasons expressed in previous decisions and discussed further below. Regardless, this Court joins another jurist from the Northern District of Illinois in deferring to *Castañon-Nava* as highly persuasive, directly applicable authority from a superior tribunal on a pure question of law. *See Morales Perez*, No. 1:25-CV-14995, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026).

mandatory detention now than he was when the government exercised its discretion *not* to detain him 2018 and 2022.

Additionally, the government arrested Mr. Magallanes-Casas pursuant to an administrative warrant issued by DHS. Dkt. 8-2 at 6. The warrant is addressed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." *Id.* Section 236 of the INA is codified at 8 U.S.C. § 1226. Meanwhile, the warrant does not cite Section 235—8 U.S.C. § 1225. The government determined and documented that Mr. Magallanes-Casas was subject to arrest under § 1226, not § 1225.

This Court has consistently reasoned that mandatory detention and discretionary release are mutually exclusive concepts. An alien cannot be subject both to mandatory detention under § 1225(b)(2)(A) and eligible for discretionary release under § 1226(a)(2); the provisions can only exist harmoniously if they apply to separate classes of aliens. *Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025). The government treated Mr. Magallanes-Casas as subject to § 1226(a) when it granted him discretionary release in 2018 and 2022, and it acted under § 1226(a) when it took him into custody in December. It cannot now maintain that he is subject to § 1225(b)(2) and therefore categorically ineligible for discretionary release. *Id.* (citing *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) ("[T]he government cannot switch tracks and subject Petitioners to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioners in removal

proceedings under section 1229a and released them on their own recognizance under section 1226(a)."); *Fornalik v. Perryman*, 223 F.3d 523, 530 (7th Cir. 2000)).

The government's application of § 1225(b)(2) to detain Mr. Magallanes-Casas without considering bond is contrary to the INA. His continued detention without consideration of bond therefore violates the laws of the United States, and he is entitled to habeas corpus relief.

**C.     Jurisdiction Under § 1226(e)**

The respondents also argue that, even if Mr. Magallanes-Casas's detention is governed by § 1226, then § 1226(e) deprives the Court of jurisdiction over his claim. This argument collapses under its own weight. Section 1226(e) precludes review of the "Attorney General's discretionary judgment regarding the application of" § 1226 to detain an alien or revoke or deny bond or parole. The Attorney General has not rendered a discretionary judgment under § 1226. Her delegee—Judge Beese—expressly found that he lacked jurisdiction to even consider bond. The Attorney General has not considered the possibility of bond or parole and therefore has not revoked or denied it.

Section 1226(e) might preclude this Court's intervention if Mr. Magallanes-Casas requested bond, an immigration judge considered his request on the merits and denied it, and he petitioned this Court for a different result. That is not the case, here, and therefore not before the Court. The government has not made a discretionary decision to detain Mr. Magallanes-Casas. Rather, the government insists that it has no discretion. Section 1226(e) does not apply to this case.

**D.     Relief Available**

Mr. Magallanes-Casas asks the Court to order his immediate release. Any relief afforded through habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Mr. Magallanes-Casas maintains—and the Court agrees—that his detention without

9

consideration of bond is contrary to law because his detention is authorized by § 1226(a), which makes him eligible for discretionary release but also allows the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Magallanes-Casas's custody is not unlawful because of the very fact that he is detained. Rather, his custody is unlawful only to the extent the government refuses to consider whether he may be released as the law requires.

E.      **Exhaustion of Administrative Remedies**

Finally, the respondents argue that Mr. Magallanes-Casas's claims are premature because he has not exhausted every remedy available through the immigration system. Specifically, he has not appealed Judge Beese's refusal to consider his bond request to the Board of Immigration Appeals, and he has not appealed an unfavorable decision by that body to the Seventh Circuit. Dkt. 8 at 6–7. Mr. Magallanes-Casas argues that exhaustion is not required by the law in this context; that any attempt to exhaust administrative remedies would be futile because Judge Beese applied a BIA decision—*Matter of Yajure Hurtado*—as the basis for refusing to consider bond; and that elevating the issue to the BIA serves no purpose here, where the question at issue is interpretation of a federal statute. Dkt. 12 at 3–4.

The respondents do not cite a statute requiring Mr. Magallanes-Casas to proceed to the BIA before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts determined that the petitioner was not required to exhaust administrative remedies because doing so would be futile given *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily*

10

*precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2–3, 6–9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Mr. Magallanes-Casas was not required to exhaust administrative remedies because doing so would be futile.

### III. Conclusion

The petition for a writ of habeas corpus is **granted** insofar as the respondents will have **seven days** to certify that Mr. Magallanes-Casas has (1) appeared for a bond hearing before an immigration judge consistent with 8 U.S.C. § 1226(a) and pertinent regulations, or (2) been released from detention. The petition is **denied** to the extent it seeks an order that Mr. Magallanes-Casas be immediately released. The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date: 2/2/2026

_____
JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Luis Angeles
Angeles Law LLC
luis@abogadoangeles.com

Rachel Dever
Church Church Hittle and Antrim
rdever@cchalaw.com

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov